UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY B. FERGUSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 18 C 5016 |
| | ) | |
| THE GOODMOJO CORP. and | ) | |
| ALFRED CHEUNG, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants the GoodMojo Corp. ("GoodMojo") and Alfred Cheung's ("Cheung") (collectively, the "Defendants") motion to dismiss Plaintiff Anthony B. Ferguson's ("Ferguson") first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part and denies in part the motion.

## BACKGROUND

For purposes of this motion, the Court accepts as true the following facts from the amended complaint. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). All reasonable inferences are drawn in Ferguson's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Defendant GoodMojo is a Delaware corporation with its principal place of business in California. GoodMojo is a computer software development and applications business which provides services to governmental agencies, not-for-profit organizations, and small businesses. Defendant Cheung is a California resident and GoodMojo's chief executive officer, having co-founded the company in March of 2015. Plaintiff Ferguson, an Illinois resident, served as GoodMojo's general counsel and head of business development from April 30, 2015 until May 4, 2018.

Since its formation, GoodMojo has had issues with its liquidity. As a result, Ferguson did not collect a salary for most his employment period. Further, GoodMojo requested that Ferguson incur expenses on the company's behalf with the understanding that he would be reimbursed for those expenses. Specifically, Ferguson incurred expenses related to a $105,000 loan, a $32,000 state tax payment, and $151,000 in miscellaneous company expenses.

With respect to the loan, on or about January 12, 2017, Ferguson, GoodMojo, and Cheung, as borrowers, executed a note payable to Timothy J. Rand ("Rand"), as lender and note holder, in the principal amount of $105,000. To secure the note, the parties entered into a loan agreement (collectively referred to as the "loan documents"). On June 15, 2017, approximately six weeks before the note matured, Rand assigned and transferred all of his rights and interest in the loan documents to Ferguson. On June 28, 2018, Ferguson demanded the note be repaid. According to the complaint, the note has been in default since August 1, 2017, with $115,500 owed to Ferguson.

Regarding the state tax payment, Ferguson entered into an agreement with Cheung on March 29, 2018 to advance $32,000 to GoodMojo to satisfy the Employment Development Department tax imposed by the State of California. In exchange, once GoodMojo received its tax refund, it would repay Ferguson. However, once GoodMojo received its tax refund on June 15, 2018, it did not reimburse Ferguson.

Finally, Ferguson incurred over $151,000 in company expenses between 2015 and 2018. These expenses ranged from transportation and lodging to corporate filing fees and company loans. Despite a demand for repayment, GoodMojo has failed to reimburse Ferguson for these costs.

On October 15, 2018, Ferguson filed his first amended complaint against the Defendants, alleging claims for breach of contract, unjust enrichment, and a violation of the California Labor Code. On December 17, 2018, the Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations, but they must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim

3

must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## **DISCUSSION**

### I. Personal Jurisdiction Against Cheung

First, the Court addresses whether we have personal jurisdiction over Cheung. "Because Illinois permits personal jurisdiction if it would be authorized by either the Illinois Constitution or the United States Constitution, the state statutory and federal constitutional requirements merge." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010).

Ferguson asserts that the Court has specific personal jurisdiction over Cheung, which "refers to the jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Perfect Brow Art, Inc. v. Ramzy*, 2018 WL 5994973, *2 (N.D. Ill. 2018). To establish specific personal jurisdiction, Ferguson must meet three requirements: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his

4

activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (internal citations omitted).

With respect to the first factor, in the context of breach of contract claims the Court looks to "the parties' negotiations preceding their agreement, the course of dealing between the parties, the terms of the agreement and foreseeable future consequences arising out of the agreement." *Bombliss v. Cornelsen*, 355 Ill. App. 3d 1107, 1113 (2005). "[W]here the defendant deliberately has…created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). Such is the case here. Cheung built an ongoing business relationship with Ferguson, an Illinois resident who worked primarily in Illinois; he entered into a loan agreement with Rand, an Illinois resident, with the intention of making payments toward the loan in Illinois and directing communications regarding the loan to Illinois;[1] he agreed to a choice-of-law provision that stated Illinois law would govern any disputes arising from the contract;[2] and he directed communications to

---

[1] While the existence of "an individual's contract with an out-of-state party *alone*" cannot establish sufficient minimum contacts for specific personal jurisdiction, the terms of said contract and the contemplated future consequences arising from the contract can give rise to sufficient minimum contacts. *Burger King Corp.*, 471 U.S. at 478–79.

[2] Although a choice-of-law "provision standing alone would be insufficient to confer jurisdiction," courts may consider this as a factor in determining whether the defendant has established sufficient minimum contacts with the forum state. *Burger King Corp.*, 471 U.S. at 482.

Ferguson in Illinois in pursuit of several other loan agreements. Thus, Cheung "has accepted the privilege of doing business with the forum state, and it is not unreasonable to require him to litigate there." *Bombliss*, 355 Ill. App. 3d at 1113.

Turning to the second factor, the Court finds that the alleged injuries arose from Cheung's forum-related activities. The allegations in the amended complaint stem from Cheung's representations to Ferguson that he would reimburse Ferguson for the expenses he incurred on GoodMojo's behalf, whether that be in relation to the loan agreement, the state tax advance, or the miscellaneous expenses. The facts asserted in the amended complaint "establish the required nexus between a defendant's contacts and the underlying cause of action." *Felland*, 682 F.3d at 676–77.

Finally, the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. In making this determination, courts assess "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 677 (internal quotation marks omitted). Here, Cheung has "not shown that it would be unduly burdensome for [him] to defend this action in Illinois. It would appear that most of the documentary evidence and some of the witnesses are situated in Illinois." *Bombliss*, 355 Ill. App. 3d at 1116. Next, "Illinois has a strong interest in providing its residents with a convenient forum." *Id.* Further, "any damages sustained by [Ferguson] would

6

have affected [his] interests in Illinois." *Id.* Finally, the parties have made no suggestion that a different forum would be more efficient or better serve the interest of furthering fundamental substantive social policies.

As all three requirements are met, the Court finds that we have specific personal jurisdiction over Cheung. Accordingly, the following claims may proceed as to both of the Defendants.

## II. Breach of Contract Claims

The Defendants urge the Court to dismiss the breach of contract claims for two main reasons: (1) the purported assignment of the loan documents was improper; and (2) the note payment was fully satisfied, meaning there was no breach upon which to sue. The Court addresses each argument in turn.

First, the Defendants maintain that the purported assignment of the loan documents from Rand to Ferguson was improper because it was actually a modification. An assignment transfers a contractual right from one party to another. Restatement (Second) of Contracts § 317 (1981). However, an assignment constitutes a modification to the contract if it "introduces new elements into the details of the contract, cancels some of them, but leaves the general purpose and effect undisturbed." *Chicago Coll. of Osteopathic Med. v. George A. Fuller Co.*, 776 F.2d 198, 208 (7th Cir. 1985). Although the purported assignment transferred the noteholder rights from Rand to Ferguson, it had the effect of changing GoodMojo and Cheung's obligations under the agreement, as they were jointly and severally liable with Ferguson for the loan amount.

7

Thus, the assignment was, in effect, a modification of the parties' respective obligations under the loan documents.

Given that the Court has determined the agreement between Rand and Ferguson was a modification, it is ineffective in two respects. First, according to the loan documents, all parties must agree to any modifications. As GoodMojo and Cheung did not agree to Ferguson becoming the note holder, the modification was not valid. Second, "[i]t is well-established under Illinois law that modifications to a contract must have separate, valid consideration. Pre-existing obligations are not sufficient consideration." *Aguilera v. Freedman, Anselmo, Lindberg & Rappe, LLC*, 2011 WL 2292302, at *7, n.5 (N.D. Ill. 2011). Therefore, Ferguson paying Rand the amount due on the note is insufficient consideration for a modification, as he was fulfilling his existing obligations under the agreement. "Absent valid consideration there can be no modification." *Chicago Coll. of Osteopathic Med.*, 776 F.2d at 209. Therefore, Ferguson has no basis to bring a breach of contract claim, as he was not the noteholder at the time the loan payment was due.

Even if the Court determined the purported assignment from Rand to Ferguson was valid, Ferguson's breach of contract claims would still fail. First, Ferguson cannot be both the borrower and the lender on the loan documents. As the Restatement of Contracts discussed, "[i]n one sense a person can make a promise to himself, but the law does not provide remedies for breach of such promises." Restatement (Second) of Contracts § 9 (1981). Therefore, Ferguson would not be able to bring an action

enforcing such an agreement. Second, as the amended complaint acknowledges, "Mr. Ferguson has paid…the principal and interest on a $105,000.00 loan which matured on July 31, 2017." Therefore, Ferguson satisfied the obligation under the loan documents, meaning that there was no breach upon which to sue. Ferguson attempts to salvage his breach of contract claims by saying that he can enforce them as a co-borrower under a theory of joint and several liability. However, that is precisely why his claims fail. As the parties agreed to be jointly and severally liable for the loan payment, Ferguson's individual satisfaction of the debt eliminated their collective obligation. Accordingly, Ferguson cannot state a claim for breach of contract, and the Court dismisses Counts I and II of the amended complaint.

**III. Unjust Enrichment Claims**

The Defendants next move the Court to dismiss the unjust enrichment claim in Count III. They maintain that unjust enrichment is not a separate cause of action in Illinois, rather it must be tied to separate allegations of unlawful conduct. However, this is a misinterpretation of Seventh Circuit precedent. In *Cleary v. Philip Morris, Inc.*—the most recent Seventh Circuit case to address this issue—the Court held that while Illinois recognizes unjust enrichment as an independent cause of action, if that "claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). In other words, unjust enrichment may be alleged as a stand-alone

9

claim, but where it is tied to conduct alleged in another substantive count, its success is contingent on that count proceeding.

In Count III, Ferguson alleges unjust enrichment against GoodMojo and Cheung in relation to the non-repayment of the state tax advance and the miscellaneous company expenses. While these allegations are premised on an unfulfilled agreement between the parties, the agreement that underlies the breach of contract claims in Counts I and II is distinct from that of Count III. Therefore, the validity of Count III is not contingent on the validity of Counts I and II.

"To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Serv., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 160 (1989). Ferguson alleges that he arranged with Cheung to advance $32,000 to GoodMojo for the payment of a state tax, for which he was never repaid. Similarly, Ferguson alleges that he incurred approximately $151,000 in company expenses, such as loans for the company to distribute payroll and travel and lodging for its officers. Ferguson was also not reimbursed for these expenses. These allegations sufficiently allege a claim for unjust enrichment, so Count III of the amended complaint may proceed.

Unlike Count III, the allegations in Count IV rest on the same improper conduct asserted in Counts I and II. Given that those counts were dismissed above, Count IV cannot stand according to *Cleary*. 656 F.3d at 517.

Furthermore, the Defendants urge the Court to dismiss Count IV because an unjust enrichment claim cannot stand where an express agreement governs. *See Sevugan v. Direct Energy Serv., LLC*, 2018 WL 2267806, at *8 (N.D. Ill. 2018) ("In Illinois recovery for unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and the defendant."). Ferguson entered into an agreement with GoodMojo and Cheung that obligated him to be jointly and severally liable for the payment of a $105,000 note. Although Ferguson may feel cheated because he made the entire payment, that is within the agreed upon terms of the contract. Declining unjust enrichment claims where the parties have entered into a contract "holds the contract parties to their agreement and prevents a party who made a bad business decision from asking the court to restore his expectations….Quasi-contract…is not a means for shifting a risk one has assumed under contract." *Prodromos v. Poulos*, 202 Ill. App. 3d 1024, 1031 (1990). Thus, the unjust enrichment theory asserted in relation to the $105,0000 note is barred by the existence of the parties' loan agreement, and the Court must dismiss Count IV.

**IV. California Labor Code § 2802 Claim**

Finally, Ferguson alleges in Count V a claim under Section 2802 of the California Labor Code, which states that "an employer shall indemnify his or her

11

employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties…." Cal. Labor Code § 2802(a). The Defendants assert that Ferguson cannot bring a claim under the California Labor Code, as he was not principally employed in California.

In his response to the Defendants' motion to dismiss, Ferguson not only failed to address this argument, but he neglected to reference or defend his Count V claims at all. Such a failure to respond "results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning."); *See also Jones v. Connors*, 2012 WL 4361500, at *7 (N.D. Ill. 2012) (collecting cases). Accordingly, the Court grants the Defendants' motion to dismiss Count V.

## CONCLUSION

For the aforementioned reasons, the Court grants in part and denies in part Ferguson's motion to dismiss. Counts I, II, IV, and V are dismissed. Count III may proceed. It is so ordered.

Dated: 8/12/2019

_____
Charles P. Kocoras
United States District Judge